IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

DATON BUMBREY,                                    )
                                                  )
          Plaintiff,                              )
                                                  )
    v.                                            )    Civil Action No. 1:22-cv-642 (RDA/JFA)
                                                  )
KILOLO KIJAKAZI, *Acting Commissioner of*         )
*Social Security*,                                )
                                                  )
          Defendant.                              )

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion for Summary Judgment ("Motion") (Dkt. 17). The Court dispenses with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). The Motion is now ripe for disposition. Considering the Motion, together with Defendant's Memorandum in Support (Dkt. 18), it is hereby ORDERED that Defendant's Motion is GRANTED for the reasons that follow.

I. BACKGROUND

A. Factual Background[1]

The administrative record before this Court contains the following relevant evidence.

_____

[1] The facts set forth in this section are taken from the uncontradicted administrative record submitted to the Court. *See Krichbaum v. Kelley*, 844 F. Supp. 1107, 1110 (W.D. Va. 1994) ("When the court, as here, reviews the decision reached by an administrative agency, the summary judgment motion stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review."), *aff'd*, 61 F.3d 900 (4th Cir. 1995).

### 1. Plaintiff's Disability Benefits

Plaintiff was born with sickle cell anemia.  Administrative Record ("AR") 510.  In 2010, when Plaintiff was nine years old, he applied for supplemental security income based on disability due to sickle cell disease and associated pain.  AR 56-57, 135-41.  Plaintiff qualified for, and began receiving, child disability benefits due to his sickle cell pain and borderline intellectual functioning.  AR 75.

### 2. Plaintiff's Daily Activities and Work History

Prior to graduating high school in 2019, on a typical day, Plaintiff attended school, watched television, made himself after-school snacks, played videogames, completed his homework, spent time with friends, and embraced "whatever the day [held] for him."  AR 38, 297, 308, 338, 349.  He had no issues with personal care—bathing, dressing, toileting—except during sickle cell pain crises.  AR 298, 309, 339, 350.

After graduating from high school, Plaintiff began working at Walmart stocking shelves.  AR 37, 100.  He enjoyed the work and his coworkers.  AR 100.  Plaintiff reported the ability to lift a case of bottled water or a large bag of dog food and other products weighing up to 50 pounds.  AR 48, 100.  He testified that he eventually stopped working at Walmart because he kept getting sick.  AR 39.

On a typical day, Plaintiff prepared light meals for himself and did household chores, including washing dishes, sweeping, cleaning his room, vacuuming, and mowing the lawn.  AR 100, 299, 310, 340, 351.  Although he did not have a driver's license, he went outside every day on his own, navigating public transportation, walking, or riding in a car.  AR 300, 341, 352.  He shopped in stores for clothes, snacks, movies, and games.  AR 301, 311, 342, 352.  He went to the library and to Walmart.  AR 302.

2

In addition to doing chores and shopping, Plaintiff played video games, put together model cars, watched television, and went deer hunting.  AR 39, 100, 301, 312, 342, 353.  He fished and rode on a four-wheeler.  AR 523.  He spent time with his nephews and other family members and babysat his nieces and nephews.  AR 39, 523.  On a typical day, he took care of his personal needs and then watched television until he went to bed.  AR 523.

    3. Plaintiff's May 14, 2019 Psychological Evaluation with Faye Romano, Psy.D.

On May 14, 2019, Plaintiff underwent a psychological evaluation with Faye Romano, Psy.D.  AR 509-13.  Plaintiff explained to Dr. Romano that he was seeking social security benefits due to his sickle cell anemia.  AR 510.  He admitted, however, that he was not currently experiencing any symptoms from the disorder and that medications helped in any sickle cell crises.  *Id.*  He also reported a history of borderline intellectual functioning.  *Id.*

Plaintiff told Dr. Romano that, on a daily basis, Plaintiff awoke at 6 a.m. to prepare for school, went to school by bus, and returned home around 3 p.m., after which he made himself food, watched television, played video games, and occasionally went outside.  *Id.*  He stated that he did not require any assistance with his personal needs.  *Id.*  He did not need help managing his finances and could complete simple mathematic calculations like addition, subtraction, multiplication, and division.  *Id.*

Dr. Romano reported that, during the examination, Plaintiff was cooperative, responsive, and displayed adequate eye contact.  AR 511.  His attention and concentration appeared normal, *id.*, and his mood was stable, *id.*  Plaintiff's thought content was "appropriate to the situation," and his thought processes were "intact and goal oriented."  *Id.*  Dr. Romano found that Plaintiff's intellectual abilities were likely within the borderline range.  *Id.*  His insight and judgment appeared "adequate."  AR 512.  Based on her examination, Dr. Romano concluded that Plaintiff

"would not have difficulty following simple and routine tasks demands under supervision."  *Id.*
Dr. Romano further found that Plaintiff would be able to maintain regular attendance in the
workplace, perform work activities on a consistent basis, and complete a normal workday or
workweek without interruption.  *Id.*  She also concluded that Plaintiff could cope with routine
stressors in a competitive work environment.  AR 512-13.

4. Plaintiff's August 5, 2019 Psychological Evaluation, Mental Status Exam, and IQ Testing with
Therese May, Ph.D.

On August 5, 2019, Plaintiff underwent a psychological evaluation, mental status exam,
and IQ testing with Therese May, Ph.D.  AR 521-24.  Plaintiff reported that he typically wakes up
at 10 a.m. and performs light chores such as washing dishes and taking out the trash.  AR 523.  He
shared with Dr. May that he spends his days watching television, playing video games, or
babysitting nieces and nephews.  *Id.*  He also stated that he enjoys fishing and riding a four-
wheeler.  *Id.*

Dr. May reported that, on examination, although Plaintiff was not able to state the date, his
address, or the purpose of the examination, he was alert and oriented.  AR 522.  She noted that
Plaintiff's thought processes were logical and goal directed, and there was no evidence of
hallucinations, delusional thinking, or paranoia.  *Id.*  According to Dr. May, Plaintiff exhibited no
symptoms of anxiety or depression, and his judgment appeared generally intact.  *Id.*  However,
Plaintiff's attention and concentration appeared impaired, and his fund of knowledge was "below-
age" of his peers.  *Id.*  Plaintiff's full-scale IQ was 71, placing him in the borderline range of
intellectual functioning.  AR 524.  Based on her examination, Dr. May concluded that Plaintiff had
a "mild-to-moderate" impairment in his ability to understand and perform simple and repetitive
tasks.  *Id.*  Plaintiff's processing speed was slow, and his functioning was "uneven" based on his

sickle cell disease.  *Id.*  He could not perform detailed or complex tasks.  *Id.*  Plaintiff could interact with supervisors, coworkers, and the general public.  *Id.*  He would require special supervision for most tasks and would likely decompensate under the stresses of competitive work.  *Id.*

### 5. Plaintiff's February 2020 Eye Surgery

In February 2020, Plaintiff saw his ophthalmologist, complaining of blurry vision stemming from his sickle cell retinopathy.  AR 674.  The doctor recommended surgery, and on March 18, 2020, Plaintiff underwent eye surgery for retinal detachment and proliferative sickle cell retinopathy of his left eye.  AR 642, 645, 656.  Plaintiff consistently did well in post-operative visits.  AR 688, 693.  By April 2020, he was cleared to taper his post-operative drops and continued to do well.  AR 698.  In May 2020, his eye remained stable.  AR 703.  Plaintiff's retinal detachment and vitreous hemorrhage were resolved by September 2020.  AR 708, 709.

### 6. Plaintiff's Additional 2020 Medical History

In August 2020, Plaintiff went to the emergency room with a fever.  AR 569.  His mother had contracted COVID-19.  *Id.*  His provider noted, "[o]n exam, patient actually looks very well." AR 572.  His physical examination was normal—normal range of motion, no tenderness, no edema, no focal deficits—and his laboratory studies on his blood counts were all within normal range.  AR 571, 572.  His provider found him stable for discharge.  AR 572.

Plaintiff returned to the emergency room on September 25, 2020, complaining of lower back and chest pain after jumping at Sky Zone Trampoline Park ("Sky Zone").  AR 587-88.  X-rays of his chest and lumbar spine were normal.  AR 588-89.  A physical examination was normal—normal range of motion, normal cardiovascular, pulmonary, and abdominal sounds.  AR 600, 613.  Plaintiff reported that "jumping up and down on the trampoline at Sky [Z]one is what triggered the sickle cell crisis."  AR 608.  He was discharged with medication.  *Id.*

In November 2020, Plaintiff saw his hematologist again.  AR 633.  Plaintiff admitted that he was not taking his hydroxyurea medication as prescribed and had been controlling his pain with Tylenol.  *Id.*  His hematologist noted that Plaintiff was "[f]ully active, able to carry on all pre-disease performance without restriction."  AR 634.

In December 2020, Plaintiff returned to the emergency room suspecting a sickle cell crisis with upper chest tightness and left lower back pain.  AR 719, 726.  His pain gradually improved after IV hydration, and he was discharged with medication.  AR 719.  Plaintiff reported feeling well overall and denied any chest pain, shortness of breath, or nausea.  *Id.*  He had no lower back tenderness, and his strength was full in his bilateral lower extremities.  AR 722.  His physical examinations were normal: normal sensation, intact light touch, and normal heart, lungs, and abdomen.  AR 724, 735, 739-40, 744.  An x-ray of Plaintiff's chest showed "no convincing evidence of acute thoracic disease radiographically."  AR 730, 773.  An x-ray of his lumbar spine showed no instability and no concerning lesion fracture or subluxation.  AR 772.  A computerized tomography ("CT") scan of his chest showed bilateral pulmonary nodules, bone infarctions, and a surgically absent spleen.  AR 741-42.  A magnetic resonance imaging ("MRI") scan of his lumbar and thoracic spines showed some height loss but no canal or neural foraminal stenosis.  AR 742, 768-70.

7. Independent Review of Plaintiff's Mental Limitations by State Agency Medical Consultants

On May 31, 2019, Richard Luck, Ph.D., independently reviewed the record and determined that Plaintiff had moderate limitations in understanding, remembering, or applying information; mild limitations interacting with others and concentrating, persisting, or maintaining pace; and no limitations in adapting or managing himself.  AR 63.  Dr. Luck concluded that the "[o]verall evidence suggest[ed] that the claimant [was] capable of" simple, routine tasks.  *Id.*  In so finding,

Dr. Luck explained that Plaintiff was able to perform his activities of daily living independently and had graduated from high school.  *Id.*  He had no history of mental health treatment and could complete simple math calculations.  *Id.*  There was no difficulty with recent and long-term memory and only mild difficulty with short-term working memory.  *Id.*  Although Plaintiff would likely have some difficulty with detailed instructions, he should be able to perform familiar or routine procedures.  AR 66.

On August 15, 2019, Howard S. Leizer, Ph.D., independently reviewed the record and conducted a psychiatric review technique.  AR 525-44.  Dr. Leizer concluded that Plaintiff had a mild intellectual disability.  AR 529.  Dr. Leizer found that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace; and merely mild limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing himself. AR 537.  Dr. Leizer explained that Plaintiff had a diagnosis of intellectual disability with scores indicative of borderline intellectual functioning.  AR 542.  Plaintiff would likely have some difficulty with detailed instructions but should be able to perform "familiar or routine procedures." *Id.*  He would be capable of performing simple, routine tasks on a sustained basis.  AR 544.

8. Independent Review of Plaintiff's Physical Limitations by State Agency Medical Consultants

On May 31, 2019, Bert Spetzler, M.D., independently reviewed the record and found that Plaintiff could perform medium work.  AR 64-65, 67.  In so finding, Dr. Spetzler considered Plaintiff's activities of daily living, his medical treatment, admissions to medical sources, and longitudinal treatment records.  AR 64.  Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations.  AR 65.

On August 16, 2019, Michael Koch, M.D., independently reviewed the record and found that Plaintiff could perform medium work.  AR 546.  Dr. Koch found that Plaintiff could perform

all postural activities frequently but only occasionally climb ladders, ropes, and scaffolds.  AR 547.  He had no manipulative, visual, communicative, or environmental limitations.  AR 548–49.  After reviewing the medical records, Dr. Koch explained that Plaintiff had no hospitalizations since January 2018, his sickle cell pain was controlled with Ibuprofen, and he appeared "capable of performing a wide range of medium work."  AR 553.

### 8. Vocational Expert Testimony

Robert Jackson, an impartial vocational expert, testified at a December 22, 2020 hearing before Administrative Law Judge ("ALJ") L. Raquel BaileySmith.  AR 28.  The ALJ asked the vocational expert several hypothetical questions, including whether an individual with Plaintiff's characteristics could perform work in the national economy.  AR 50 ("[A]ssume a person of the Claimant's age, education, and work experience with the residual functional capacity as indicated in hypothetical number one, except the hypothetical individual is limited to light work, and is able to occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.  Never climb ladders, ropes, or scaffolds.  Are there any jobs such a hypothetical individual would be able to perform?").  In response, the vocational expert testified that such an individual would be able to perform the representative light jobs of cleaner, marker, and laundry worker.  *Id.*  ("Cleaner . . . would be an option at the light, unskilled level . . . .  There are over 220,000 positions in the national economy.  Marker, also light, unskilled . . . .  There are over 120,000 positions in the national economy.  Laundry worker, light, unskilled . . . .  There are over 20,000 positions in the national economy.  Those are examples . . . .").

## B. Procedural Background

### 1. The ALJ's Decision

As required under Social Security Administration ("SSA") Regulations, when Plaintiff turned 18 years old, his eligibility for disability benefits was redetermined under the rules for determining disability in adults.  AR 74, 101; *see also* 20 C.F.R. § 416.987 (SSA regulations governing disability redeterminations for individuals who attain age 18).  The SSA initially found Plaintiff to no longer be disabled as of May 31, 2019.  AR 74-77, 101-09.  That determination was upheld upon reconsideration on December 4, 2019.  AR 71, 110-12.  Plaintiff subsequently requested a hearing before an ALJ, AR 115-17, and a telephonic hearing was held before ALJ BaileySmith on December 22, 2020, AR 27.  Plaintiff, who was unrepresented, his mother, and an impartial vocational expert testified.  AR 28.  On March 29, 2021, ALJ BaileySmith issued a decision finding that Plaintiff was no longer disabled as of May 31, 2019.  AR 9-20.  The Appeals Council denied Plaintiff's request for review, AR 1-3, and the instant appeal followed.

### 2. Plaintiff's Appeal in this Court of the ALJ's Decision

On June 6, 2022, Plaintiff filed a Complaint in this Court, seeking judicial review pursuant to 42 U.S.C. § 405(g) of ALJ BaileySmith's decision.  Dkt. 1.  On April 5, 2023, this Court entered a summary judgment briefing schedule, ordering that Plaintiff file any motion for summary judgment on or before April 19, 2023 and that Defendant file any motion for summary judgment on or before May 3, 2023.  Dkt. 14.  On April 24, 2023, this Court received Plaintiff's Letter Motion for Extension of Time ("Letter Motion"), dated April 11, 2023, requesting that the Court extend briefing deadlines to allow Plaintiff more time to obtain an attorney.  Dkt. 15.  On May 1, 2023, Magistrate Judge John F. Anderson denied Plaintiff's Letter Motion.  Dkt. 16.  Subsequently, on May 3, 2023, Defendant filed a motion for summary judgment, Dkt. 17, along with a

Memorandum in Support thereof, Dkt. 18.   To date, Plaintiff has not filed a cross motion for summary judgment or an opposition to Defendant's Motion.

## II.   STANDARD OF REVIEW

In reviewing an ALJ's disability determination, this Court is limited by Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), which requires "uphold[ing] the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard."   *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).   "Substantial evidence is that which 'a reasonable mind might accept as adequate to support a conclusion.'" *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir.2005)).   The substantial evidence standard is "more than a mere scintilla," but "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotation omitted).   Importantly, this standard does not invite the Court to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the" ALJ.   *Craig*, 76 F.3d at 585 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990)).

"[I]n performing [its] limited function," this Court is "restricted to the administrative record."   *Huckabee v. Richardson*, 468 F.2d 1380, 1381 (4th Cir. 1972) (citations omitted); *see also Smith v. Chater*, 99 F.3d 635, 638 n.5 (4th Cir. 1996) ("[I]n determining whether the ALJ's decision is supported by substantial evidence, a district court cannot consider evidence which was not presented to the ALJ." (citations omitted)).

## III.   APPLICABLE LAW AND REGULATIONS

The Social Security Act defines disability in terms of the effect an impairment has on a claimant's ability to function in the workplace. *Sullivan v. Zebley*, 493 U.S. 521, 528 (1990).   The SSA regulations set forth a five-step sequential evaluation process that ALJs employ in

determining whether an individual has a disability.  20 C.F.R. § 416.920; *see also Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the five-step sequential evaluation process).

At step one, the ALJ looks at whether the claimant is currently working.  § 416.920(a)(4)(i).  Step two requires the ALJ to determine whether the claimant's medical impairments satisfy the regulations' severity and duration requirements.  § 416.920(a)(4)(ii).  At step three, the ALJ considers whether the medical impairments meet or equal the requirements of an impairment listed in the regulations.  § 416.920(a)(4)(iii).  Between steps three and four, the ALJ assesses the claimant's residual functional capacity, which is the most the claimant can do despite his physical and mental limitations.  § 416.920(e).  At step four, the ALJ evaluates whether the claimant can perform his past work given her residual functional capacity.  § 416.920(a)(4)(iv).  "The burden of proof remains with the claimant through step four of the analysis, such that []he must prove that h[is] limitations preclude h[im] from past relevant work." *Tracy H. J. v. Kijakazi*, No. 3:20-CV-00564 (MHL), 2021 WL 5985125, at *3 (E.D. Va. Dec. 1, 2021), *report and recommendation adopted sub nom. Tracey H.J. v. Kijakazi*, No. 3:20CV564, 2021 WL 5985169 (E.D. Va. Dec. 16, 2021) (citations omitted).  If the claimant is able to perform such past work, the analysis ends at step four and benefits will not be awarded.  *Id.* (citing §§ 416.920(e), 404.1520(e)).  "However, if the claimant cannot perform h[is] past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy." *Id.* (citing § 404.1520(a)(4)(v)).

## IV.  ANALYSIS

Plaintiff seeks judicial review of ALJ BaileySmith's determination that he is "not disabled," asserting in his Complaint that he is in fact disabled and "do[es] [not] agree with [the] decision made [i]n [his] case."  Dkt. 1.  Defendant, on the other hand, maintains that the ALJ's

determination is supported by substantial evidence and therefore this Court should not encroach upon it. Dkt. 18. The Court begins with a high-level overview of the ALJ's decision before considering whether the ALJ's findings at each step of the sequential evaluation process were supported by substantial evidence and reached through application of the correct legal standards.

### A. The ALJ's Decision

On March 29, 2021, ALJ BaileySmith issued a written opinion, concluding that Plaintiff did not qualify as disabled under the relevant SSA regulations. AR 9-20; *see also* 20 C.F.R. § 416.905 (basic definition of disability for adults). The ALJ followed the traditional five-step sequential evaluation process in analyzing Plaintiff's disability claim. AR 9-20. First, the ALJ determined that step one was not applicable to Plaintiff's case because that step is not used for redetermining disability at age 18. AR 10 (citing § 416.987(b)). At step two, the ALJ found that Plaintiff suffered from the following severe impairments since May 31, 2019: sickle cell anemia, sickle cell retinal detachment, and borderline intellectual functioning. AR 12. The ALJ also found that Plaintiff had a non-severe impairment of avascular necrosis in his hip. *Id.* At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 12-14. Next, after an evaluation of the evidence, including all of the medical opinions, the ALJ found that Plaintiff retained the ability to perform light work with the following limitations:

> [Plaintiff] can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; he can never climb ladders, ropes, or scaffolds, and should avoid all exposure to heights and hazards; he can understand, remember, apply, and carry out simple, repetitive tasks consistent with unskilled, repetitive work, that is learned through demonstration as opposed to reading instruction; he is able to concentrate, persist, and maintain pace sufficiently to complete unskilled, repetitive tasks that do not require a production rate pace, meaning a fast pace; he can have occasional contact with supervisors, co-workers, and the public in settings where tasks involve work primarily with objects rather than people; and he is able to adapt to occasional changes associated with unskilled repetitive work.

AR 14-18. At step four, the ALJ determined that Plaintiff had no past relevant work. AR 18 (citing Social Security Rule ("SSR") 82-62). Finally, at step five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy, including cleaner, marker, and laundry worker, that Plaintiff could perform given his residual functional capacity. AR 18-19. Ultimately, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could work and was therefore not disabled since May 31, 2019. AR 19-20.

### B. Whether the ALJ's Decision is Supported by Substantial Evidence and is Based Upon a Correct Application of the Law

#### 1. Step One

This Court first finds that the ALJ did not err in determining that the step one inquiry into the claimant's current work activity was inapplicable to Plaintiff's case. The ALJ correctly concluded that the relevant SSA regulations provide that this step is not used for redetermining disability at age 18. 20 C.F.R. § 416.987(b).

#### 2. Step Two

This Court now turns to whether substantial evidence supports the ALJ's findings that Plaintiff had the severe impairments of sickle cell anemia, sickle cell retinal detachment, and borderline intellectual functioning, as well as the non-severe impairment of avascular necrosis in his hip. The Court does not in any way discount or disregard the many personal challenges Plaintiff has had to endure because of his various conditions. However, in the context of the Court's inquiry, an impairment or combination of impairments is "severe" if it "significantly limits an individual's ability to perform basic work activities." AR 15; *see also* SSR 85-28 (defining when an impairment may be found "not severe"). "Basic work activities," in turn, are the "abilities and

aptitudes necessary to do most jobs," such as "walking, standing, sitting, lifting, pushing, pulling, and reaching; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers, and usual work situations; and dealing with changes in a route work setting."  SSR 85-28.

This Court first finds that the ALJ's determination that Plaintiff's impairments of sickle cell anemia, sickle cell retinal detachment, and borderline intellectual functioning are "severe" is supported by the administrative record.  This Court also finds that the ALJ reasonably concluded that Plaintiff's impairment of avascular necrosis in his hip is not severe.  The ALJ explained that Plaintiff's avascular necrosis was treated through surgery when he was ten years old and that there is little evidence in the record that his hip condition had recurred since the surgery.  AR 12; *see also Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) ("If a symptom can be reasonably controlled by medication or treatment, it is not disabling.").  Further, the ALJ emphasized that neither Plaintiff nor his mother indicated that his avascular necrosis prevented him from performing any activities.  AR 12.  Accordingly, the ALJ's finding that Plaintiff's avascular necrosis does not significantly limit his ability to perform basic work activities is supported by substantial evidence.

### 3. Step Three

Next, this Court addresses whether substantial evidence supports the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"). "The Listings are a regulatory appendix of 'the major body systems impairments that [the SSA] consider[s] to be severe enough to prevent an individual from doing any gainful activity.'" *Katherine M. A. v. Saul*, No. 3:19CV649 (REP), 2021 WL 1207739, at *4 n.3 (E.D. Va. Feb. 2,

2021), *report and recommendation adopted*, No. 3:19CV649, 2021 WL 1206799 (E.D. Va. Mar. 30, 2021) (quoting § 404.1525(a)).  As such, if a claimant's impairment or combination of impairments meets or equals the severity of an impairment in the Listings, the claimant is presumed to be disabled and the analysis stops there.  *See Zebley*, 493 U.S. at 532 ("[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.").  "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Id.* at 530.

In the instant case, the ALJ properly considered whether Plaintiff's impairments met any Listing and reasonably determined that they did not.  AR 12-14.  The ALJ first considered Listings 2.02 (Loss of Central Visual Acuity), 2.03 (Contraction of the Visual Fields in the Better Eye), and 2.04 (Loss of Visual Efficiency) and explained that the record did not establish vision of 20/200 or less in the better eye, contraction in the visual field of the better eye, or loss of visual efficiency in the better eye.  AR 12; *see* AR 404 (describing frequent vision checks but otherwise normal vision), 441 (20/20 vision in both eyes), 668 (20/20 vision in both eyes), 674 (20/30 vision in the better eye), 680 (20/30 vision in the better eye), 697 (20/20 vision in the better eye), 702 (20/20 vision in the better eye), 707 (same).  This Court finds that the ALJ adequately explained why the evidence did not support a finding that Plaintiff met or equaled any of those listed impairments.

The ALJ next determined that Plaintiff's sickle cell anemia did not meet Listing 7.05 (Hemolytic Anemias).  Listing 7.05 requires the following: documented painful crises requiring intravenous or intramuscular narcotic medication, occurring at least six times within a 12 month period with at least 30 days between crises; or complications from sickle cell requiring at least

three hospitalizations within a 12-month period and occurring at least 30 days apart; or hemoglobin measurements of 7.0 grams per deciliter or less, occurring at least three times within a 12-month period with at least 30 days between measurements; or beta thalassemia requiring life-long red blood cell transfusions at least once every six weeks to maintain life. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 7.05.

The ALJ reasonably found that Plaintiff did not meet any of these requirements. There is no indication in the administrative record that Plaintiff's sickle cell crisis admissions required administration of intravenous or intramuscular narcotic medication. AR 12; *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 7.05A. Rather, the record indicated that Plaintiff treated his pain with oral medication and did not require intravenous pain medications. AR 719. Furthermore, Plaintiff had not experienced three hospitalizations of at least 48 hours during any 12-month period at issue due to sickle cell crises. AR 12; *see* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 7.05B. The record shows that Plaintiff was in the emergency room for sickle cell crises in September 2020, AR 587, and December 2020, AR 719. There are no further emergency room visits for sickle cell crises during a 12-month period. Additionally, Plaintiff's hemoglobin was consistently above 7.0 grams per deciliter. AR 12; *see* AR 572 (hemoglobin 13.2), 576 (same), 587 (hemoglobin 10.6), 601 (hemoglobin 12.2), 618 (hemoglobin 10.8), 720 (hemoglobin 8.0), 741 (same), 745 (same), 747 (same), 754 (same), 756 (same), 724 (hemoglobin 11.7), 728 (same), 736 (same), 766 (same), 759 (hemoglobin 8.4), 760 (hemoglobin 9.7), 763 (hemoglobin 10.1); *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 7.05C. Finally, Plaintiff and his mother both indicated that he did not require any red blood cell transfusions during the relevant period. *See* AR 102 (Plaintiff "denied any blood transfusions since the age of 7 years old"), 604 ("He has had blood transfusion but that has not been in the recent past"), 633 ("Last blood transfusion years ago"), 636 (same), 733 (Plaintiff

"denies having any blood transfusions recently"), 738 (same); *see also* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 7.05D.

The ALJ next considered whether Plaintiff's mental impairments, both singly and in combination, met any of the Listings. The ALJ specifically addressed Listing 12.05A (Intellectual Disorder), which requires, in relevant part, "[s]ignificantly subaverage general intellectual functioning evidence in [his] cognitive inability to function at a level required to participate in standardized testing of intellectual functioning." 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05A. As the ALJ explained, Plaintiff did not meet the requirements for Listing 12.05A because he successfully completed intelligence testing on multiple occasions. AR 14; *see* AR 407-08, 410-11, 421-22, 523-24. As such, the ALJ reasonably determined that Plaintiff failed to meet Listing 12.05A.

The ALJ also specifically considered whether Plaintiff's mental impairments met Listing 12.05B. To satisfy the 12.05B criteria, the mental impairments must result in one extreme limitation or two marked limitations in the following areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing himself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.05B. The ALJ concluded that 12.05B was not met because Plaintiff had no more than a moderate limitation in any of the four areas of mental functioning. AR 14. In assessing the 12.05B criteria, the ALJ stressed that Plaintiff's hearing testimony and psychiatric examinations indicated that he is able to prepare simple meals, perform simple household chores, play video games, shop, and live with others. AR 12-13. The ALJ thus appropriately addressed the mental impairment listings and thoroughly explained why the evidence did not support a finding that Plaintiff's impairments met or equaled a listed impairment. Accordingly, this Court finds that substantial

17

evidence supports the ALJ's determination that Plaintiff did not have an impairment or combination of impairments that satisfied any Listing.

### 4. Residual Functional Capacity

This Court now turns to whether substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity.  A claimant's residual functional capacity is an assessment of the most he can do despite his credibly established limitations resulting from his medically determinable impairments.  20 C.F.R. § 416.945(a).  The residual functional capacity assessment is based upon all the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of his own limitations.  § 416.945(a).  Notably, however, a residual functional capacity need not contain all of a claimant's purported impairments; rather, a residual functional capacity assessment must reflect only the claimant's credibly established functional limitations and restrictions.  *See Hammond v. Apfel*, 5 F. App'x 101, 105 (4th Cir. 2001) ("With no objective evidence to support allegations of [an alleged limitation], the ALJ did not need to consider it."); SSR 96-8p ("The [residual functional capacity] assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms.").

Here, the ALJ determined that Plaintiff could perform a reduced range of light work with additional limitations.  AR 14.  With respect to exertional limitations,[2] the ALJ found that Plaintiff

---

[2] SSA regulations define exertional limitations as those limitations that "affect [one's] ability to meet the strength demands of jobs."  20 C.F.R. § 404.1569a(a) (Exertional and Nonexertional Limitations).  By contrast, SSA regulations define non-exertional limitations as those that "affect [one's] ability to meet the demands of jobs other than the strength demands . . . ."  *Id.*

"can only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl; he can never climb ladders, ropes, or scaffolds, and should avoid all exposure to heights and hazards." *Id.* As for non-exertional limitations, the ALJ found that

> [Plaintiff] can understand, remember, apply, and carry out simple, repetitive tasks consistent with unskilled, repetitive work, that is learned through demonstration as opposed to reading instruction; . . . is able to concentrate, persist, and maintain pace sufficiently to complete unskilled, repetitive tasks that do not require a production rate pace, meaning a fast page; he can have occasional contact with supervisors, co-workers, and the public in settings where tasks involve work primarily with objects rather than people; and . . . is able to adapt to occasional changes associated with unskilled repetitive work.

*Id.*

In making these findings, the ALJ considered Plaintiff's testimony, and in particular, his subjective complaints, to the extent that they were supported by evidence in the record. For instance, the ALJ noted that, at the hearing, Plaintiff testified that he lost his last job due to frequent sickle cell crises requiring hospitalization over the past year. AR 15, 39. The ALJ also acknowledged Plaintiff's history of sickle cell anemia, including the sickle cell crises that he experienced during the relevant period. AR 15. Against that testimony and medical history, the ALJ weighed Plaintiff's testimony that he graduated from high school and was able to complete an interview for his recent position as a shelf stocker at Walmart. *Id.*; *see* AR 37, 39, 100. The ALJ further considered the fact that Plaintiff had not been following prescribed treatment for his sickle cell anemia. AR 15-16. The ALJ explained that the evidence did not establish good cause for Plaintiff's failure to follow prescribed treatment, the use of which would likely reduce the frequency of his sickle cell crisis incidents. AR 16 n.1. As such, the ALJ concluded that Plaintiff's absences due to sickle cell crises did not preclude employment. *Id.*; *see* § 416.930(a) (mandating that if prescribed treatment can restore an individual's ability to do work-related functions, the individual must comply with it). The ALJ also emphasized that one of Plaintiff's crises occurred

19

after he decided to jump at Sky Zone despite his treatment providers advising him to limit his exertion due to his sickle cell anemia.  AR 15.

The ALJ further addressed Plaintiff's sickle cell proliferative retinopathy, which he had undergone surgery for.  AR 16.  The ALJ noted that Plaintiff's condition was stable in both eyes, and Plaintiff did not mention any vision issues during the hearing.  *Id.*; *see* AR 703, 707. Moreover, the ALJ considered the evidence in the record that Plaintiff had worked as a stocker at Walmart with no vision issues and that he spent his days watching television and playing video games.  AR 16; *see* AR 39, 296, 297, 338, 349, 510, 523.  Nevertheless, considering Plaintiff's medical history, the ALJ found that he had certain environmental limitations, including avoiding all exposure to heights and hazards.  AR 14, 16.

The ALJ next addressed Plaintiff's borderline intellectual functioning.  She acknowledged that Plaintiff displayed well-below average functioning as a child and had a history of poor executive functioning, slow thinking, and poor information processing and working memory.  AR 16; *see* AR 407-08, 411, 414, 505, 524.  The ALJ noted, however, that Plaintiff was generally independent in his activities of daily living and was able to successfully complete an interview for his recent work position.  AR 16; *see* AR 37, 39.  Finally, the ALJ explained why she found each medical opinion in the record persuasive or not persuasive based on their consistency with the overall record.  AR 17-18.

This Court finds that the ALJ fully and objectively considered all the relevant evidence in the administrative record and reasonably resolved inconsistencies in the record.  The role of a reviewing court is not to reweigh conflicting evidence or to substitute its judgment for that of the ALJ.  *Craig*, 76 F.3d at 589.  Accordingly, this Court concludes that the administrative record

contains sufficient evidence to support the ALJ's determination that Plaintiff has the residual functional capacity to perform light work with certain exertional and non-exertional limitations.

### 5. Step Four

This Court next finds that the ALJ did not err in determining that Plaintiff had no past relevant work.  The ALJ correctly found that, although Plaintiff worked as a stock clerk at Walmart, his earnings in that position did not reach the requisite substantial gainful activity levels, and that position therefore did not qualify as past relevant work pursuant to SSR 82-62.  AR 18.

### 6. Step Five

Finally, this Court considers whether the ALJ's finding that Plaintiff can perform jobs that exist in significant numbers in the national economy is supported by substantial evidence.  At step five, the SSA Commissioner has the limited burden of producing evidence showing that a claimant, despite his limitations, can perform a significant number of jobs in the national economy.  20 C.F.R. § 416.960(c)(2).  In determining whether this burden has been satisfied, the ALJ may rely on vocational expert testimony, § 416.966(e), as the ALJ did in the instant case.  For a vocational expert's opinion to be relevant, it must be in response to a proper hypothetical question that ensures that the vocational expert knows what the claimant's abilities and limitations are.  *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989); *see also Katherine M. A. v. Saul*, No. 3:19-CV-649, 2021 WL 1207739, at *13 (E.D. Va. Feb. 2, 2021), *report and recommendation adopted*, No. 3:19CV649, 2021 WL 1206799 (E.D. Va. Mar. 30, 2021) ("The vocational expert's answer is relevant when the ALJ's hypothetical limitations match the claimant's substantiated impairments, as expressed in the residual functional capacity determination.").

Here, this Court finds that the ALJ posed a proper hypothetical question that ensured that the vocational expert knew what the claimant's abilities and limitations were.  The question made

clear that that the vocational expert was to take into account Plaintiff's age, education, and work experience, as well as the limitations that the ALJ had determined comprise Plaintiff's residual functional capacity.  AR 18-19, 50.  The vocational expert's response to the hypothetical question therefore constitutes substantial evidence supporting the ALJ's determination that Plaintiff can perform jobs that exist in significant numbers in the national economy.  *See Maldon v. Berryhill*, 2018 WL 6790652, at *6 (E.D. Va. Oct. 9, 2018), *report and recommendation adopted*, 2018 WL 6795831 (E.D. Va. Nov. 15, 2018) ("[T]he testimony of the vocational expert identifying three separate types of jobs plaintiff could perform in the national economy based on that residual functional capacity provides substantial evidence for the ALJ's determination that plaintiff can perform work that exists in the national economy.").

***

In sum, the ALJ issued a thorough and comprehensive decision in which she considered the relevant evidence in the record, including Plaintiff's testimony, and fully explained the reasons Plaintiff is not disabled under the SSA regulations.  This Court need only consider whether the ALJ's decision was supported by substantial evidence, an evidentiary standard that the Supreme Court has deemed "not high."  *Biestek*, 139 S. Ct. at 1154.  As explained *supra*, the ALJ properly employed the five-step sequential evaluation process, and her findings at each step are supported by substantial evidence.  Accordingly, this Court affirms the ALJ's decision.

## V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motion for Summary Judgment (Dkt. 17) is GRANTED and Plaintiff's Complaint is DISMISSED.

The Clerk is directed to forward copies of this Order to counsel of record, enter judgment for Defendant pursuant to Federal Rule of Civil Procedure 58, and close this civil action.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

It is SO ORDERED.

Alexandria, Virginia
June 12, 2023

/s/
Rossie D. Alston, Jr.
United States District Judge